## HERMANN HOSPITAL ESTATE v. NACHANT et al.

### No. 9496.

Court of Civil Appeals of Texas. Galveston.

Feb. 17, 1931.

Rehearing Denied March 12, 1931.

J. W. Lockett, of Houston, for appellant.

Ward & Ward, of Houston, for appellees.

LANE, J.

This suit was instituted by G. H. Hermann against August Nachant, J. R. Nachant, N. B. Knight, and Mamie Knight on July 28, 1914, in the form of trespass to try title to approximately 22 acres of land in the P. W. Rose survey in Harris county. G. H. Hermann died during the pendency of the suit, and the trustees of his estate were substituted as plaintiffs, who adopted the name of Hermann ' Hospital Estate, and under that name they are prosecuting this suit.

On November 8, 1926, more than twelve years after the suit was first instituted, the suit was dismissed for want of prosecution.

On January 12, 1927, plaintiffs filed what they termed their bill of review, praying that the order of dismissal mentioned be set aside and that the cause be reinstated on the docket of the court with the same force and effect as if it had never been dismissed.

On the 1st day of July, 1927, the court entered an order wherein it is recited that the court had heard plaintiffs' original bill of review and motion to set aside the order of dismissal and the answer of defendants thereto, and the evidence and arguments of the parties thereon, and had announced that the order of dismissal would be set aside, and had granted leave to plaintiffs to file an amended bill of review. It is then recited that plaintiffs did not have notice of such dismissal until more than thirty days after the entry of such order and not until after the adjournment of the term at which such order was entered; that, after hearing the evidence relative to the matter, the court was of opinion that the case should be reinstated, and it was so ordered. It is also recited in the order that plaintiffs tendered their evidence on the merits, but the defendants, not desiring to then try the case on the merits, objected to such evidence, and that, as the court had other cases set for trial which had precedence over the trial of this case, the case should be postponed until later called. The trial of the cause was then postponed to November 14, 1927, and from time to time thereafter until October 21, 1929, at which time it was tried upon what the plaintiffs termed their second bill of review and amended petition, filed on June 10, 1927, prior to the date on which the dismissal order was set aside, and two years prior to the trial of the cause on its merits, and upon the amended answer of defendants filed January 18, 1928, sev-

eral months after the entry of said dismissal order wherein they demurred generally to the plaintiff's petition and by special demurrer pleaded as follows: "Defendants specially demur and except to said alleged amended bill of review wherein it contains allegations for the purpose of setting aside a certain judgment of dismissal entered by this court in this cause on the 8th day of November, A. D. 1926, and more particularly referred to in said alleged amended bill of review, because said alleged motion or amended bill of review does not show any grounds for the setting aside of the final judgment of this court, said order of dismissal in said cause, of which special demurrer and exception these defendants pay judgment of the court."

They averred that the judgment of dismissal entered on November 8, 1926, was and is a final judgment in the cause; that it was not appealed from, and is now in full force and effect. They pleaded such judgment in bar of further proceedings in the cause. They denied, generally, and specially pleaded the statutes of limitation of three, five, and ten years.

On the 26th day of October, 1929, the court overruled the general and special demurrers of defendants and proceeded to the trial of the cause on its merits, and, before submitting any issue to the jury selected to try the cause, the court announced the following findings: "It appears to the court and the court finds that the plaintiffs sued for a tract of land 177 varas wide from North to South by 708 varas long from East to West containing approximately 22.18 acres in the P. W. Rose Survey, and that as a matter of law the plaintiffs have the record title to the Northern 144 varas wide from North to South by 708 varas long from East to West containing approximately 17.66 acres off of the North part of the 22.18 acres sued for, which approximately 17.66 acres plaintiffs are entitled to recover unless defendants have acquired title by five years limitation to that part thereof within defendants' enclosure, which enclosure includes approximately 14.96 acres of the South part of said 17.66 acres, and the court further finds as a matter of law that the defendants have the record title to 36 varas wide from North to South by 708 varas long from East to West, and including approximately 4.51 acres of the South part of the approximately 22.18 acres sued for, which approximately 4.51 acres defendants are entitled to recover, and the court finds that there is an issue of fact as to whether the defendants are entitled to recover by limitation the approximately 14.96 acres, being 708 varas long from East to West by 116 varas wide from North to South at its East end, and 122 varas wide from North to South at its West end, and being off of the South side of the 17.6 acres aforesaid, and North of and adjoining the 4.51 acres aforesaid, and the court decided to submit such issue of fact to the jury."

Having so found, the court submitted to the jury the sole and only question as to whether or not defendants had acquired title to the 14.96 acres mentioned by the statute of limitation of five years.

In answer to the question submitted, the jury found that defendants and those under whom they claim had been in peaceable, adverse, and continuous possession of said 14.96 acres of land; that they had cultivated, used, and enjoyed the same, paying taxes thereon and claiming under deeds duly registered, for a period of five consecutive years prior to the 28th day of July, 1914.

Upon such findings of the court and the verdict of the jury, judgment was rendered in favor of defendants for the 4.51 acres mentioned in the court's findings and the 14.96 acres involved in the findings of the jury, aggregating 19.47 acres, which were described in the decree by metes and bounds, and in favor of plaintiffs for the 2.71 acres mentioned in the court's findings, which is also described by metes and bounds in the decree.

From the judgment entered in favor of defendants for the 14.96 acres, the plaintiffs have appealed.

At the outset we are met by an objection of appellees to the consideration by this court of appellant's appeal and a prayer for an affirmance of the judgment in their favor. They urge that the judgment of dismissal of the cause on November 8, 1926, was a final judgment, and that the order of the court purporting to set aside such judgment was and is a nullity and did not affect the validity of the dismissal decree, and therefore the judgment sought to be appealed from to this court is not a final judgment from which an appeal will lie.

As already stated, the suit was dismissed on the 8th day of November, 1926, and that on January 12, 1927, after the term of the court at which the decree of dismissal was entered, appellants filed a motion to reinstate the case and a bill of review, and on the 10th day of June, 1927, they filed their amended bill of review and second amended petition upon which they finally went to trial of the cause on its merits. On July 1, 1928, the court entered an order purporting to set aside the judgment of dismissal and reinstating the cause, which reads as follows: "Therefore it is here now ordered, adjudged and decreed by the court that the judgment or order of this court dismissing this case for lack of prosecution on or about the 8th day of November, 1926, shall be and the same is hereby cancelled and set aside and shall henceforth be null and void and held for naught just as if the same had never been rendered or entered, and this case is re-instated on the docket of this court with the

same force and effect and with the same status as if it had never been dismissed, but inasmuch as the other pending business of this court prevents the court from hearing the full evidence on the merits of this case and completing the trial at this time the same is set down for further hearing on the merits and as to the title of the land involved for the 14th day of November, 1927, to which judgment and order of the court defendants then and there in open court excepted."

Appellees contend that there was no final judgment setting aside the order of dismissal and that the court therefore could not in the trial last had render a valid judgment on the merits of the original controversy without at the same time hearing evidence to support plaintiffs' excuse for not promptly moving to reinstate the case and have that question readjudicated, which it did not do; that, while the court had authority to hear and determine the issues of mistake and accident alleged as grounds for setting aside the judgment of dismissal and at the same time to try the issues pertinent to the merits of the suit, it was not authorized to render judgment on the merits until the issues made by the plaintiffs in their motion and bill of review to set aside the order of dismissal were likewise disposed of by the same judgment.

It is clearly apparent from the record that the only judgment purporting to set aside the judgment of dismissal was that entered on the 1st day of July, 1927, some two years prior to the trial of the case on its merits, and that there was no attempt to adjudicate that matter in the trial of the case on its merits. But, in the decree setting aside the order of dismissal and reinstating the cause, the court states that, after hearing the evidence relative to the rights of the plaintiffs to have such order set aside and to have the cause reinstated, it finds that plaintiffs had a meritorious cause of action and that they had shown good cause for the setting aside of the order of dismissal and for the reinstatement of the cause; that "thereupon the plaintiffs tendered their evidence on the merits but as the defendants do not desire to now try the case on the merits and object to such evidence * * * the trial of this case will be postponed until the date hereinafter specified." The date specified was November 14, 1927.

It is thus made to appear that after the cause had been dismissed the plaintiffs filed a bill of review at a subsequent term of the court, setting up causes why the court should exercise its equitable powers and set aside the judgment of dismissal, reinstate the case, and permit the plaintiffs to enter into a trial of the merits of the case, that the court upon the filing of such bill heard the pleadings, the evidence, and argument relative to the matters presented, and that upon such hearing concluded that plaintiffs had set up equitable grounds for the relief prayed for, and that, having so concluded, rendered judgment, the effect of which was to place the case on the docket subject to trial on its merits.

It is apparent that necessarily the first steps to be taken by the court, if the case was to be heard on its merits, was, first, to set the former judgment of dismissal aside; and, second, to reinstate the same on its docket. It appears that these steps were taken on the 1st day of July, 1928, and that the plaintiffs thereupon and at that time tendered their evidence on the merits, but that, as defendants sought a postponement of the trial on the merits, such postponement was had.

■ We can hardly bring ourselves to the conclusion that, where a case is reinstated upon the application of the plaintiffs after being dismissed, the court must force the defendants at once into a trial of the merits of the case, and that, if it should not do so, a judgment of reinstatement is rendered null and of no effect. Since it is shown by the judgment rendered that at the time the case was reinstated plaintiffs tendered their evidence on the merits of the case and asked that the court proceed with the trial of the case on its merits, and since it appears from such judgment that the hearing on the merits was postponed at the request or desire of the defendants, appellees (defendants in the trial court) are in no position to now insist that the judgment of reinstatement must fall as a nullity and that the judgment on the merits must likewise fall, as no evidence was heard upon the trial of the merits in support of plaintiffs' excuses for not promptly moving for a reinstatement of the cause and to have that question readjudicated.

Appellees' contention that this appeal should be dismissed is overruled.

Having disposed of the contention of appellees, we shall now consider the contention submitted by appellants for a reversal of the judgment.

■ Appellants contend, first, that the court erred in submitting to the jury the issue as to whether appellees had title to the 14.96 acres of land lying just north of lots 21 and 22 of the subdivision mentioned herein, under the provisions of the five-year statute of limitation; and, second, that the finding of the jury that the defendants and those under whom they claim had been in peaceable, adverse, and continuous possession of the 14.96 acres of land, and had cultivated, used, or enjoyed the same, paying the taxes thereon and claiming under deeds duly registered, for a period of five consecutive years prior to the

28th day of July, 1914, was without evidence to support it.

They contend that, since the plat of the Blount land calls for the corner of the Gladich, a fixed and known corner, as the northeast corner of lot 20, and since it shows that a line running due west from the Gladich forms the north line of lots 20, 21, and 22 and calls for the lines of these lots from north to south to be 620 varas, without calling for any fixed object, such distance call will control the location of the south line of the lots, and hence land lying north of a line 620 varas from the south line of lots 21 and 22 is no part of either of said lots, and therefore the calls in the deeds under which appellees hold does not embrace any land north of the north line of said lots, and as a corollary appellees are not holding under a deed or deeds conveying to them any land north of the north line of said lots and are not entitled to recover under the five-year statute of limitation.

Appellants insist, further, that to support the five-year limitation title claimed by appellees it must be shown that the taxes due on the land in their possession for the five consecutive years next to the filing of suit for same were paid by appellees, and that such land was assessed by such a description as gave notice to the real owner that appellees and those under whom they held were assessing the real owner's land; that the showing only, as was done in this case, that such taxes were assessed only on lot 22 and the north half of lot 21, does not show that such taxes were assessed and paid on any land north of the north boundary lines of such lots, and therefore appellees were not entitled to a recovery of the 14.96 acres lying north of such lines upon their plea of limitation of five years.

Appellees contend that, even if lots 21 and 22, as originally subdivided and located, did not include the land in controversy, nevertheless, as described subsequently in the deeds in their chain of title, such lots do include such land in controversy, and that such subsequent deeds support their claim of five-year limitation.

The evidence shows that one R. S. Blount owned something more than 1,000 acres of land in the Rose survey in Harris county lying along the east boundary line of said survey, and extending to its south boundary line; same being also the north boundary line of the B. H. Freeling survey. Blount died, and one J. W. Lawrence was made administrator of his estate. In November, 1871, Lawrence, administrator, by virtue of an order of the district court of Harris county sitting in probate matters, subdivided the Blount land mentioned into lots, and made plat thereof. This plat shows that the most western corner of the Gladich survey was the northeast corner of lot 20 of said subdivision, that the east boundary line of lot 20 begins at said Gladich corner and runs with the west line of the Gladich south 620 varas for its southeast corner, and that from such corner its south boundary line runs west 354 varas for corner. The plat also shows that lots 21 and 22 of such subdivision lie west of lot 20; that the west line of lot 20 forms the east line of lot 21, and the west line of lot 21 forms the east line of lot 22; that the south line of lots 21 and 22 is a line drawn due west from the south line of lot 20; that a line drawn due west from the most western corner of the Gladich survey forms the north boundary line of lots 20, 21, and 22. The plat shows that each of said lots from north to south is 620 varas in length and from east to west 354 varas in width. This plat is shown to have been attached to a report of J. W. Lawrence, administrator, of such platting and sale of the land to the court, which report was approved by the court on November 8, 1871. It is shown that such report was recorded in the probate record of Harris county on the 15th day of May, 1909, but there is no showing that the plat was recorded anywhere. There are recitals, however, in some conveyances, that such plat was recorded in deed records.

The record title to lots 21 and 22 passed by mesne conveyance from the estate of Blount to Mary Stewart.

Mary Stewart, by her deed of date April 28, 1908, conveyed to O. H. Barnes land described as follows:

"Two certain blocks or parcels of land, each containing 40 acres, being a part of the Pleasant W. Rose league situated South of the City of Houston, and known and designated upon a plat and subdivision for the estate of R. S. Blount by A. L. Steele, and recorded in the books of record of deeds in said Harris County, Texas, as lots Nos. 21 and 22, which said plat is here particularly referred to, and further reference is made to the field notes of William Bradburn made September 11, 1899, County Surveyor of said Harris County, Texas, as follows:

"Beginning at an iron pipe 354 varas West of a R. R. Iron, the S. E. corner of the P. W. Rose Survey, league.

"Thence North 620 varas on iron pipe;

"Thence West 708 varas to iron pipe;

"Thence South 620 varas on iron pipe;

"Thence East 708 varas on iron pipe to the place of beginning, containing 80 acres of land, being the same land conveyed to me by deed dated January 12, 1888, from Justin A. Goodhue," etc.

On September 8, 1908, O. H. Barnes con-

veyed the same land to Edward F. Rowson and Adolph C. Swanson, with the same description, with the added reference to the preceding deed.

On September 22, 1908, Adolph C. Swanson and Edward F. Rowson conveyed the same tract of land to John N. Reibel and J. P. Clark, with the same description as the first-mentioned deed.

These purchasers, Clark and Reibel, immediately went into possession, built a house and other improvements in the fall of 1908, and placed a fence around the 80 acres, as described in said deeds, in the spring of 1909, which fence remained as placed until they sold the land to Nachant, Knight, and Winter on August 24, 1909.

It is shown that appellants were the record-owners of lot 14, which lies just north of and contiguous to lots 21 and 22. It is shown that said lots are wholly within the P. W. Rose survey. It is shown that, in a controversy between one McIver, who owned land bordering on the north boundary of the Freeling survey, same being the south line of the Rose survey, as to where such boundary was located, it was agreed that such division line was some 136 or more varas north of where appellants contend the south boundaries of lots 21 and 22 are located, and that such agreed boundary was established in a suit between Hermann and McIver, as an agreed line. It is shown that, beginning on such agreed line, the calls in the deeds under which appellees, hold, for 620 varas north as the length of the east and west lines of lots 21 and 22, and thence 708 varas east the width of the two lots, would include the 14.96 acres involved in this suit.

The witness W. H. Parker testified that under the direction of Hermann he built for Hermann a fence along the agreed line above mentioned; that Hermann then recognized the agreed line as the south line of the Rose survey.

In view of the facts stated, we think the description of the land as made in the deeds under which appellees hold, which were duly recorded, was amply sufficient to give notice to Hermann that appellees, and those under whom they claim, were claiming and occupying the land involved adversely to Hermann.

We also think that the description of the land as given in the assessment of taxes made by appellees was sufficient to give notice to the world what land was being assessed.

The facts stated, we think, are sufficient to support the finding of the jury complained of, also the judgment rendered upon such finding. The judgment is affirmed.

Affirmed.